IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

GREGORY D. JONES,

      Plaintiff,

v.

      Case No. 24-cv-2566-NJR

PERCY MYERS and BOB BLUM,

      Defendants.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Gregory D. Jones, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This matter is before the Court on a motion for summary judgment on the issue of administrative exhaustion filed by Dr. Percy Myers (Docs. 34, 35).[1] Jones filed a response (Doc. 43) in opposition to the motion.

### BACKGROUND

On December 5, 2024, Jones filed a Complaint alleging deliberate indifference to his medical needs, but the pleading was dismissed for failure to state a claim (Docs. 1, 9). In his First Amended Complaint (Doc. 11), Jones alleged that Nurse Practitioner Bob Blum and Dr. Myers were deliberately indifferent in treating his pain. Specifically, Jones

---

[1] Nurse Practitioner Bob Blum withdrew his affirmative defense of failure to exhaust administrative remedies (Docs. 33, 37).

alleged that Blum refused to renew his prescription for Naproxen for his back and shoulder pain from a prior injury and surgery (Doc. 12, p. 2). Blum stopped the prescription in August 2024, despite Jones having received the prescription since 2019. On August 13, 2024, Jones spoke to Blum about his pain medication as well as issues with excessive urination. Blum ordered blood work but failed to renew the pain medication. He also never contacted Jones about the blood work results (*Id.*).

As to Dr. Myers, Jones alleged that he too ignored his bloodwork results and failed to refer him to a specialist (Doc. 12, p. 2). On August 20, 2024, Jones informed Dr. Myers that an increase in one of his prescription medications failed to relieve his symptoms (Doc. 11, p. 11). Jones contended that he suffered from urinary retention and pain during urination (Doc. 12, p. 2). He specifically requested a referral, but Dr. Myers instructed Jones to wait for the return of his bloodwork. But neither Blum nor Dr. Myers ever informed him of the results, and he continued to suffer from pain and urinary retention (*Id.*).

After review of the First Amended Complaint pursuant to 28 U.S.C. § 1915A, Jones was allowed to proceed on the following count:

Count 1:    Eighth Amendment deliberate indifference claim against Bob Blum and Dr. Percy Myers for failing to treat Jones's medical conditions and denying him access to pain medication and a referral to a specialist.

(Doc. 12, p. 3).

2

## A. Motion for Summary Judgment

Dr. Percy Myers filed a motion for summary judgment, arguing that Jones failed to exhaust his administrative remedies against him prior to filing his lawsuit. Dr. Myers identified numerous grievances Jones filed about his medical conditions but argued that the grievances failed to identify Dr. Myers or put prison officials on notice of his complaints against Dr. Myers.

> **September 29, 2024 Grievance (#K59-0924-3653):** In his September 2024 grievance, Jones argued that he had been complaining about his excessive urination since June 2024 (Doc. 35-2, p. 29; Doc. 35-1, p. 17). He noted that he had blood tests and saw Bob Blum but received no further treatment other than medication that was not working for his condition (*Id.*). Jones noted he submitted two sick call requests about his prescription for Naproxen but never received a response. He noted his belief that he was being retaliated against because he filed a complaint against two nurses, one of which accepted one of his sick call request slips (*Id.*). His grievance asked for access to a prostate specialist and his pain medication.
> On October 15, 2024, the grievance officer noted that the Healthcare Unit Administrator was contacted regarding the allegations in Jones's grievance (Doc. 35-1, p. 16). The administrator noted that Jones was seen for his condition on June 19, 2024, but he did not place another request to be seen until August 15, 2024 (*Id.*). He was seen on that date and referred to the MD line. He was seen on the MD line on August 20, 2024, and labs were ordered. The healthcare unit had received no additional sick call request slips since Jones was seen in August (*Id.*). The grievance officer recommended the grievance be denied, and the Chief Administrative Officer ("CAO") concurred with the decision on October 15, 2024.
> Jones appealed the grievance to the Administrative Review Board ("ARB"), but the ARB returned the grievance as untimely (Doc. 35-1, p. 15). The ARB noted that the only incidents identified in the grievance were outside of the 60-day timeframe and would not be further investigated (*Id.*).
>
> **August 23, 2024 Grievance (#K59-0824-3100):** Jones submitted a grievance in August for access to his medications and interference by officers (Doc. 35-2, pp. 33-34; Doc. 35-1, pp. 20-21). The grievance complained about the handling of his hypertension medication by nurses and correctional officers in the unit (*Id.*). He requested that non-medical personnel be prohibited from dictating when and how medications were passed out. The grievance

officer noted that records backed up Jones's claim that he missed doses of his hypertension medication and nursing staff were reminded that if medications are missing, they should return to the unit with the medication and the missed dose should be noted (Doc. 35-1, p. 19). The grievance officer affirmed the grievance, noting that Jones should receive his medication as prescribed (*Id*.). The ARB found that the grievance was appropriately addressed by the prison (*Id*. at p. 18).

**October 3, 2024 Grievance (#K59-1024-4202):** On October 24, 2024, the grievance officer received a grievance from Jones regarding the denial of adequate treatment and medication refills (Doc. 35-2, pp. 17-19). He complained about suffering from excessive urination and noted that Bob Blum only ordered a blood test and prescribed "ineffective medication." (*Id*. at p. 18). He further noted that his pain medication was supposed to be renewed in September. He indicated that this was the second grievance he had submitted about his pain (*Id*.). He again indicated that he believed his treatment was in retaliation for filing a complaint against two nurses for his hypertension medication and believed that there was an intent to cause him a stroke (*Id*.). Jones further complained that an older nurse brought him the wrong dose of his blood pressure medication, and she argued with him when he noted her mistake (*Id*. at p. 19).

On December 16, 2024, the grievance officer responded to the grievance (Doc. 35-2, p. 17). The grievance officer noted that Jones's Naproxen prescription was renewed for an entire year on November 26, 2024, and that his other medications were renewed for an entire year in June (*Id*.). Jones's prescription for Lopressor was issued on October 4, 2024. The grievance officer reminded Jones that he needed to pull the sticker no earlier than one week before he runs out of medication. Otherwise, the pharmacy would not refill the prescription in a timely manner (*Id*.). The grievance was affirmed. On December 17, 2024, the CAO concurred with the decision.

The grievance does not appear in the ARB records (Doc. 35-1).

Dr. Myers argues that he is entitled to summary judgment because none of the grievances that Jones filed identify Dr. Myers or complain about any care provided by him. Dr. Myers argues that because the grievances failed to identify him, prison officials never had an opportunity to address any of the allegations against him before Jones filed his lawsuit.

4

In response to Dr. Myers's motion, Jones argues that the Court is biased. He argues that the undersigned should recuse from the case because the Court sought to require Jones to pay his filing fee twice and failed to supply him with a copy of the Court's Local Rules (Doc. 43, pp. 1-2).

## LEGAL STANDARDS

"Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the defendant] is entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id*. Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Consequently, if a prisoner fails to properly utilize a prison's grievance process,

"the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

In *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008), the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge.[2] Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. at 742.

---

[2] Recently the Supreme Court partially overruled *Pavey* in *Perttu v. Richards*, 605 U.S. 460 (2025). Specifically, the Supreme Court held that "parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment." *Id*. at 479. Here, the issue of exhaustion is not intertwined with the merits of Jones's underlying claims. Thus, *Perttu* is not applicable.

## A. Illinois Exhaustion Requirements

As an IDOC inmate, Jones was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claim. 20 Ill. Administrative Code §504.800 *et seq.* The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer ["CAO"] within two months after receipt of the written grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The [CAO] shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the CAO's response, he can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that

7

the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the [ARB] within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may determine that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate appeals a

grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

## DISCUSSION

Dr. Myers does not dispute that Jones exhausted the grievances identified in the motion.[3] Instead, Dr. Myers argues that Jones failed to properly identify him in the grievance and failed to give prison officials a fair opportunity to address the claims against him. Although the grievance process is not designed to provide notice to anyone who might later be sued, it is designed to provide the prison with notice of the problem and give them an opportunity to fix it. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). As such, an inmate must provide enough information to serve the grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox*, 655 F.3d at 722.

---

[3] The Court notes that Jones's September 2024 grievance was returned by the ARB because they claimed it was filed outside of the 60-day timeframe (Doc. 35-1, p. 15). But Jones's grievance actually complains about the improper medical care he had received *since* June 2024. And, in responding to Jones's grievance, the grievance officer identified medical treatment that Jones had in August 2024. Further, the grievance officer did not reject the grievance on procedural grounds but ruled on its merits. *See, e.g.*, *Kane v. Santos*, Case No. 17-cv-01054-NJR, 2020 WL 967878, at *4 (S.D. Ill. Feb 28, 2020) ("[W]hen a grievance officer addresses the grievance based on the merits, rather than procedural grounds, the ARB cannot later examine the grievance based on procedural grounds."); *Spraggins v. Baker*, Case No. 13-3213, 2015 WL 558293, at *3-4 (C.D. Ill. Feb. 10, 2015) ("While the ARB later rejected Plaintiff's grievance on timeliness grounds, the ARB's decision to do so ignores the fact that the discretion to decide an untimely filed grievance on the merits lies with the Grievance Officer."); *Ford v. Wexford Health Source*, Case No. 13-cv-43-JPG, 2014 WL 685841, at *5 (S.D. Ill. Feb. 20, 2014) ("Because the grievance officer denied Plaintiff's grievances on the merits, [Defendant] cannot now assert that Plaintiff failed to exhaust his administrative remedies because the ARB rejected the grievances as untimely."). Thus, the ARB improperly rejected the grievance. It also does not appear that Jones submitted his October 3 grievance to the ARB, but the grievance officer affirmed the grievance, noting that Jones's requested relief of having his prescriptions renewed had already been fulfilled. Thus, there was nothing for Jones to appeal to the ARB because he received the relief he sought in the grievance.

Although Jones's grievances only identified Bob Blum by name, his September 29 grievance complained about the lack of medical treatment he had received *since* June 2024. He complained that he submitted sick call requests for his pain medication but failed to receive a response. He further complained about his treatment for excessive urination, noting that he had a blood test and saw Blum, but only received ineffective medication (Doc. 35-2, p. 29). The grievance did not identify Dr. Myers by name, but his grievance complained about care he received during a specific time period. Based on the information in the grievance, the healthcare unit administrator was able to review the care Jones received during that period, noting that Jones was seen on the MD line and labs were ordered on August 20, 2024. Jones's First Amended Complaint indicates that he saw Dr. Myers on this date and was told to wait for the blood test results (Doc. 11, p. 11). The healthcare unit administrator noted that Jones had not submitted any sick call request slips since being seen by the doctor and directed him to submit another request to be reevaluated (Doc. 35-2, p. 28). From the allegations in the grievance, officials were able to identify the providers of medical care during the relevant timeframe (Doc. 35-2, p. 28). This included Dr. Myers. Grievance officials were also able to address Jones's issues with his medical care, including the care provided by Dr. Myers. Thus, the grievance served its purpose and adequately exhausted the claims against Dr. Myers.[4]

---

[4] In his response to Dr. Myers's motion, Jones mostly argues that the motion should be stricken due to the alleged bias of the Court. Jones has alleged bias on numerous occasions, and the Court has already denied his request for recusal three times (Docs. 38, 40, 46). Jones's responsive brief merely repeats the same arguments that the Court has already rejected as a basis for disqualification. To the extent Jones renews his request for recusal, his request is **DENIED**.

*Glick v. Walker*, 385 F. App'x 579, 582-83 (7th Cir. 2010) (inmate's grievances served their purpose by giving officials a fair opportunity to address his concerns about his mental-health treatment and exposure to second-hand smoke without identifying individuals by name); *Williams v. Luking*, Case No. 21-cv-00448-GCS, 2023 WL 317663 at * 5 (S.D. Ill. Jan. 19, 2023) (the grievance provided notice of inmate's issues with his medical care, including care provided by the defendants, despite not specifically naming the defendants in the grievance).

CONCLUSION

For the reasons stated above, Dr. Myers's motion for summary judgment (Docs. 34, 35) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  March 17, 2026**

 

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**